**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

GERALD WILSON,                    :
                                 :
            Petitioner,          :    Civil No. 04-4705 (WJM)
                                 :
        v.                       :         **O P I N I O N**
                                 :
RONALD CATHEL, et al.,           :
                                 :
            Respondents.         :

---

**APPEARANCES:**

Gerald Wilson, Pro Se
New Jersey State Prison
#291414
P.O. Box 861
Trenton, NJ 08625

Debra A. Owens
Office of the NJ Attorney General
Division of Criminal Justice-Appellate Bureau
P.O. Box 086
Trenton, NJ 08625
Attorney for Respondents

**MARTINI, District Judge**

Petitioner, Gerald Wilson, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  Respondents filed a Response to the Petition on March 31, 2005.  Petitioner sought to withdraw his unexhausted claims on October 11, 2005. On February 28, 2006, this matter was stayed, and on September 9, 2006, the stay was vacated and Petitioner was permitted to file a motion to amend within thirty days.  Petitioner did not file a

motion to amend his petition.  The Court has considered all submissions.  For the reasons set forth below, the Court deems Petitioner's unexhausted claims withdrawn, and will deny the remaining claims.

**<u>BACKGROUND</u>**

1.  <u>Factual Background</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

> A few minutes after midnight, on February 27, 1995, Robert Hess, the manager of the International House of Pancakes ("IHOP") in Fair Lawn, was shot and killed during a robbery, which was unsuccessful because, as it turned out, the victim was not carrying the business receipts that were the object of the crime.  The three perpetrators were Timothy Jerome Smith, Darrell A. Williams, and defendant Wilson.  It was Wilson who devised the scheme, involved his codefendants, procured the handgun, provided and drove the getaway car, and later disposed of the handgun by selling it to some unidentified men.  Smith and Williams committed the robbery, and Smith, who had received the handgun from Wilson moments before exiting the getaway car, was the shooter.  Williams pleaded guilty to aggravated manslaughter and, in accordance with his plea agreement, testified against Wilson.

> Williams's description of the robbery, including Wilson's involvement, was corroborated by the testimony of Na'im Muslim, an inmate in the jail in which Wilson was housed awaiting trial.  After they became friendly, Wilson approached Muslim to find out if he knew someone who would be willing to kill Williams.  When Muslim asked why, Wilson told him of his involvement in the

robbery and killing of Hess.  Muslim testified as follows:

> [H]e told me that he had been involved, right, with a murder, right, right.  They tried to stick a pancake restaurant up in Fair Lawn, I believe he said, and he had supplied the [.380 caliber] gun to one of the guys and he was the driver, he said . . .
>
> And he had said that the guy that he wanted hit, Darrell Williams, right, told on him so this is why he wanted to try and have a hit put out on him.
>
> So he went on to say that, yeah, man, that they don't really have nothing, but what happened was we drove up to Fair Lawn and Tim Smith, I believe he said, and Darrell Williams got out of the car after he had parked the car.  He had gave [sic] Darrell the gun – he had tendered – he gave Tim the gun because Tim was in the front seat of the car and him and Darrell went out in front of the place, the pancake restaurant and what happened was they waited until the lights went out.
>
> They hid in a dumpster and then he said when the lights went out Darrell and Tim approached the guy who was the manager and they grabbed him, wrestled him down, and that's when he said Tim shot the guy in the back of his right ear after the guy started tussling and whatnot.
>
> And he said that Darrell had told the police, he said that another guy named Johnny Thompson– Johnny Thomas, I believe it was, had told on him and another guy named – a Spanish guy named Santiago had told on him, but he was interested in getting a hit done down in Trenton State Prison from somebody that I knew, so basically that's it . . . .
>
> [Defendant] went to his room and wrote down on a piece of paper Darrell Williams' name . . . .

3

> During the course of me being moved I
> misplaced it.
>
>          * * *
>
> [Defendant] was bragging and he was saying
> how he used to go to Virginia and buy guns
> and bring them back to Paterson and sell guns
> and drugs.
>
> Wilson testified.  He admitted that during 1994
> and the first two months of 1995, he had made two or
> three bus trips to and from Richmond, Virginia,
> contending that his purpose was simply to visit with
> his family.  On the last occasion, Wilson met Smith in
> Richmond, and they returned to New Jersey together by
> bus on the day of the robbery.  Although he knew both
> Williams and Smith, he said that he had no involvement
> in the planning or commission of the robbery.  However,
> Wilson admitted that on the evening of February 27,
> 1995, after the robbery, Williams asked him to get rid
> of a gun Williams had.  Although he said he never saw
> the gun, he admitted that later that day he offered to
> sell it to Timothy Glover.

(State v. Wilson, A-5636-96T4 (Jun. 21, 1999), pp. 3-5;

Respondents' Exhibit "Re" 17).

2. <u>Procedural History</u>

A Bergen County Grand Jury indicted Petitioner on six

counts, including: murder through accomplice liability, contrary

to <u>N.J.S.A.</u> 2C:11-3a(2) and <u>N.J.S.A.</u> 2C:2-6 (count two);[1] felony

murder, contrary to <u>N.J.S.A.</u> 2C:11-3a(3) (count three); robbery,

contrary to <u>N.J.S.A.</u> 2C:15-1 (count four); possession of a

firearm with the intent to use it unlawfully, contrary to

<u>N.J.S.A.</u> 2C:39-4a (count five); hindering apprehension, contrary

---

[1] Timothy Smith, the alleged shooter, was charged alone
with murder in count one.

to <u>N.J.S.A.</u> 2C:29-3a and <u>N.J.S.A.</u> 2C:29-3b (count six); and
unlawful disposition of a weapon, contrary to <u>N.J.S.A.</u> 2C:39-9d
and <u>N.J.S.A.</u> 2C:5-1 (count seven).

Petitioner was tried before a jury on various dates between
January 30, 1997 through February 20, 1997.  On February 20,
1997, the jury returned its verdict.  Petitioner was acquitted of
knowing and purposeful murder and convicted of the lesser-
included offense of aggravated manslaughter.  He was convicted of
felony murder, robbery, possession of a weapon for an unlawful
purpose, and illegally disposing of a firearm.  He was acquitted
of hindering apprehension.

On April 11, 1997, Petitioner was sentenced to an aggregate
sentence of life imprisonment plus eleven and a half years, with
a thirty-five year parole ineligibility period.

Petitioner appealed his convictions and sentence to the
Appellate Division.  On June 21, 1999, the Appellate Division
reversed the conviction on count seven (unlawful disposition of a
weapon), and remanded that aspect of the case for re-sentencing
and affirmed the remaining judgement of conviction.  Petitioner
petitioned the New Jersey Supreme Court for certification, which
was denied on November 24, 1999.

In February of 2000, Petitioner filed a <u>pro</u> <u>se</u> brief seeking
post-conviction relief ("PCR") in the trial court.  On July 2,
2000, counsel filed a brief on Petitioner's behalf.  On November

5

14, 2001, Petitioner's PCR motion was denied.  A second order denying PCR was entered on November 30, 2001.  Petitioner appealed the denial of PCR to the Appellate Division, who affirmed the decision on April 3, 2003.  The New Jersey Supreme Court denied Petitioner's petition for certification on October 21, 2003.

The instant petition was filed on September 24, 2004 (docket entry 1).  On October 29, 2004, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000)(docket entry 7).  On March 31, 2005, Respondents filed an Answer and the state court record (docket entry 10).  On August 15, 2005, Petitioner submitted an application to withdraw all legal issues that were not exhausted (docket entry 13).  Respondents submitted a response to the application on August 25, 2005 (docket entry 14).

On February 28, 2006, this Court entered an Order staying the case, and granting Petitioner thirty days to advise the Court as to his attempts to exhaust in state court (docket entry 17).  On March 16, 2006, Petitioner responded to the Order, stating that he wished to withdraw his unexhausted claims and amend the petition (docket entry 18).  On September 6, 2006, this Court vacated the stay and granted Petitioner thirty days to move to amend his complaint (docket entry 19).  Petitioner has not submitted a response to the September 6, 2006 Order.

Based on the foregoing, the Court will proceed to the merits of Petitioner's exhausted claims only, as Petitioner has repeatedly requested to have his unexhausted claims withdrawn from the petition.

**DISCUSSION**

A.   **Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

1.   The verdict was unsupported by the record. (unexhausted).

2.   Ineffective assistance of counsel in failing to request a R. 104 hearing (exhausted); failing to object to Muslim's testimony (exhausted); failure to object to prosecutorial misconduct (unexhausted).

3.   Ineffective assistance of appellate counsel in failing to argue trial court's error in allowing Muslim's testimony (unexhausted); in not arguing prosecutorial misconduct (exhausted).

4.   Prosecutorial misconduct (unexhausted).

5.   The sentence was unjust (exhausted).

6.   The jury instruction on accomplice liability was incorrect (exhausted).

7.   The jury instruction on robbery failed to define the elements of criminal attempt (exhausted).

8.   The trial judge erred in allowing evidence of Petitioner's prior bad acts to go before the jury (exhausted).

9.   The sentence was excessive (exhausted).

10.  The PCR court's denial of a hearing violated the Constitution (exhausted).

11.  Ineffective assistance of PCR counsel- failure to argue every aspect of ineffective assistance of trial counsel (exhausted).

12.  Ineffective assistance of PCR counsel- conflict of interest (exhausted).

<u>See</u> Petition for Writ of Habeas Corpus, ¶ 12 and attachment.

## B.   **Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert.</u> <u>denied</u> 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(citing <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

8

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at

9

411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

10

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.   Ineffective Assistance of Counsel Claims (Grounds 2, 3, 11, and 12).**

  1.   The *Strickland* standard

To begin, the "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668

(1984).  Under Strickland, a petitioner seeking to prove a Sixth
Amendment violation must demonstrate that his counsel's
performance fell below an objective standard of reasonableness,
assessing the facts of the case at the time of counsel's conduct.
See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir.
2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert.
denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so
serious as to deprive the defendant of a fair trial, a trial
whose result is reliable."  Strickland, 466 U.S. at 688.  "In any
case presenting an ineffectiveness claim, the performance inquiry
must be whether counsel's assistance was reasonable considering
all the circumstances."  Id.  The Supreme Court further
explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

12

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense.  See Strickland, 466 U.S. at 687.  Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. See id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to

advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal. See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir.), cert. dismissed, 527 U.S. 1050 (1999).

2.   Petitioner's Claims

Petitioner argues in Ground 2 of his Petition that trial counsel was ineffective for failing to request a Rule 104 hearing and failing to object to Muslim's testimony.  Petitioner argued that trial counsel should have sought out inmates to testify to Muslim's reputation as a jailhouse snitch, and whether or not Muslim retracted his statement to other people in the jail.  (Re 35 at pp. 4-5).

During PCR hearings on this issue, the State pointed out that Petitioner had taken the stand in his own defense and

14

testified that Muslim's testimony was false.  In reviewing the
transcripts, the Court notes that Petitioner testified that he
knew Muslim from the jail, that he never discussed his case with
Muslim, that he never gave Muslim the information that Muslim
testified to, that he never asked Muslim to have anybody killed,
and that he never confessed about his case.  (Re 31 at pp. 89-
90).  Petitioner also testified that had he observed Williams and
Muslim together in the jail.  (Re 31 at p. 90).

Based on arguments of counsel citing the proper federal
standard of Strickland, the PCR judge found that: "First and
foremost, as to trial counsel, I specifically find that it was a
strategic move not to do as [PCR counsel and Petitioner] have
argued.  The jury had the benefit of this trial attorney and his
presentation during the entire trial.  There's no question in my
mind that I must deny the application that the trial attorney was
ineffective."

In Ground 3, Petitioner argues that appellate counsel was
ineffective in not arguing prosecutorial misconduct in that the
prosecutor brought up Muslim's other crimes testimony (concerning
Muslim's testimony that Petitioner was running guns and drugs
from Virginia) in his summation.  The PCR court held an
evidentiary hearing on this issue, and appellate counsel
testified.  (Re 37).  Counsel, a public defender with eighteen

years experience, testified that she did not raise the issue of prosecutorial misconduct in summation on appeal because:

> . . . there was no objection, and I generally don't raise prosecutorial misconduct points where there's no objection made because we never win them.  The case law is terrible on plain error prosecutorial misconduct, so unless it's something completely outrageous, I generally don't raise it.
>
> The other thing is because the judge, the judge let the evidence in and the prosecutor was using evidence that the judge had allowed in, so to me technically it was not misconduct.  If the judge had kept it out and he had raised it, then it would be misconduct, but the judge said the jury could hear this evidence, so to me the error was the initial introduction of the evidence, not necessarily the prosecutor's using it later on.

(Re 37 at pp. 9-10).

The PCR judge found that appellate counsel had realized there was an issue regarding prosecutorial misconduct on direct appeal, and that there was no objection at trial to the statements.  The PCR judge denied Petitioner's claim of ineffective assistance of counsel and "place[d] great weight on [counsel's] experience as appellate counsel and the number of capital cases and murder cases that she has handled on appeal that she realizes the hurdle or the burden on a direct appeal on items not raised below where there's been specifically no objection by defense counsel."  (Re 37 at p. 24).  Thus, in essence, the PCR judge found that appellate counsel had determined that the prosecutorial misconduct claim on direct

appeal would not have been successful, and thus Petitioner's conviction would not be overturned on that claim.

Petitioner appealed the denial of PCR based on counsels' performances to the Appellate Division, which found that "[a]fter carefully considering the record and briefs, we are satisfied that all of defendant's arguments are without sufficient merit to warrant discussion in a written opinion." (Re 4 at p. 3).

After a thorough review of the state court record, this Court agrees with the reasoning of the state court utilizing the correct federal Strickland standard for ineffective assistance of counsel claims. Trial counsel's actions regarding the testimony of Muslim may be presumed to be sound trial strategy, considering Petitioner testified that Muslim basically perjured himself, and that trial counsel vigorously cross-examined Muslim as to his ulterior motives for testifying, including consideration for parole. (Re 31 at p. 31). Appellate counsel's decision not to raise an issue on direct appeal that she thought would be unsuccessful also does not demonstrate deficient performance. Thus, counsels' performances cannot be said to be "deficient" under the Strickland standard.

Nor has Petitioner demonstrated that the results of his trial or appeal would have been different had his attorneys acted some other way in defending him at trial and presenting his appeal. A review of the record reveals that trial counsel

17

presented an adequate defense with the facts he had before him. Despite counsel's efforts, there was sufficient evidence presented for the jury to examine, assess credibility, and determine Petitioner's guilt.  Further, had appellate counsel raised the prosecutorial misconduct claim on direct appeal, as Petitioner would have preferred, it would likely lose under New Jersey law, for the reasons cited by appellate counsel in the PCR hearing: there was no objection to the prosecutor's comments by defense counsel, and the testimony concerning the other crimes evidence had already been admitted.

Petitioner has demonstrated neither that counsels' performances were deficient, nor that the results of the trial or appeal would have been different had the attorneys acted as Petitioner now suggests.  As the state courts applied the correct Strickland standard to Petitioner's claims and reasonably applied the facts, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  These grounds for a writ of habeas corpus, are therefore denied.[2]

## D.   Petitioner's Claims Regarding Sentencing (Grounds 5 and 9).

In Ground Five, Petitioner claims that his sentence was unjust in that it was "obtained through a coordination of unethical behavior on the part of the state and the lack of effective assistance of counsel."  In Ground Nine, Petitioner argues that his sentence was excessive because "the mitigating factors outweighed the aggravating factors, because his criminal record was limited to two indictable convictions in which he received probation."

The Appellate Division discussed Petitioner's sentencing claims on direct appeal, stating:

> Defendant's fourth point is addressed to the sentences imposed.  He argues, and the State properly concedes, that the judge erred in failing to merge the charge of possession of the handgun for an unlawful purpose into the robbery charge.  On remand, a corrected judgment shall be entered.

---

[2]   In Grounds 11 and 12, Petitioner argues ineffective assistance of PCR counsel.  However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Therefore, Petitioner's Grounds 11 and 12 for habeas relief will be denied.

Defendant also argues that his sentence was excessive because he was only an accomplice and his criminal record was limited to two indictable convictions for which he had received probationary sentences.  In emphasizing his role as an accomplice, defendant omits reference to the evidence that this crime was his creation and that he supplied the weapon that resulted in the victim's death.

The judge found the following aggravating factors: N.J.S.A. 2C:44-1a(1), (3), (6), (9), and (11).  He found one mitigating factor, N.J.S.A. 2C:44-1b(11).  He then determined that the aggravating factors clearly and convincingly outweighed the mitigating factors. Defendant does not contend that any of those findings is unsupported by evidence.  When a conscientious judge exercises discretion in sentencing in accordance with the standards of the Criminal Code, second-guessing by an appellate court is inappropriate unless the sentence is so unreasonable as to shock the judicial conscience. As modified by deletion of the sentence on the gun possession charge, and as further affected by our reversal of the gun sale charge, the sentence is not so long as to shock the judicial conscience.

(Re 17 at pp. 12-13)(citations omitted).

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment:  "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983).  More recently, Justice Kennedy has explained that Solem does not mandate comparative analysis within and between jurisdictions.  See Harmelin v. Michigan, 501 U.S. 957, 1004-05 (Kennedy, J., concurring in part and concurring in judgment). Justice Kennedy identified four principles of proportionality review--"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"--that "inform the final one:  The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," Id. at 1001 (citation omitted), quoted with approval in Ewing, 538 U.S. at 23.

Here, Petitioner was convicted of felony murder, aggravated manslaughter, robbery and other counts, and received a life sentence, with a period of parole ineligibility.  Any sentencing error that may have occurred is a matter of state law and does not rise to a level of disproportionality that violates the Eighth Amendment.  As the sentencing issue raised by Petitioner is a matter of state law, and because the Court finds no constitutional violation, this claim must be denied.

**E.    <u>Petitioner's Claims Regarding Jury Instructions (Ground 6 and Ground 7).</u>**

In Ground Six, Petitioner argues that the jury instruction on accomplice liability was incorrect in that it "potentially caused the jury to believe that merely silently assenting to and approving of another person's criminal behavior makes one an accomplice."  In particular, Petitioner argued on direct appeal that the language used by the judge in the charge was incorrect, in that silent "assent" or "approval" of a criminal scheme does not constitute the purposeful action of aiding and abetting a crime.  In Ground Seven, Petitioner argues that the trial judge failed to define the elements of criminal attempt in his instruction on robbery.

Petitioner raised these claims on direct appeal.  As the Appellate Division explained:

Under Point I, defendant complains, under the plain error rule, about the presence in the accomplice charge of the following language:

22

While mere presence at the scene of the perpetration of a crime does not render a person a participant in it, <u>proof that one is present at the scene of the commission of the crimes, without disapproving or opposing it, is evidence from which, in connection with the other circumstances, it is possible for the jury to infer that he assented thereto, lent to it his countenance and approval and was thereby aiding the same.</u>
[(Emphasis added.)]

That language conforms to the Model Jury charge and has been frequently endorsed as a correct statement of the law.  Its use in this case was not error and certainly not plain error.

Under Point II, defendant raises another point not preserved in trial court.  He claims that he is entitled to a reversal of his convictions for robbery and felony murder because the judge failed, during the charge on robbery, to explain the concept of attempt in detail.  In a case such as this, where the robbery conviction was not based on a completed theft, a full explanation of attempt . . . is required.  <u>State v. Gonzalez</u>, 318 N.J. Super. 527, 536 (App. Div. 1999).  But this case is distinguishable from <u>Gonzalez</u> because there the judge never explained attempt.  Here, by contrast, attempt was mentioned during the robbery charge in the discussion of the phrase "in the course of committing a theft," and the concept of attempt was fully and accurately defined elsewhere in the charge, albeit during an explanation of the law relating to one of the other offenses.

In deciding whether a jury instruction is erroneous, it must be considered in the context of the entire charge.  When the issue is raised as plain error, the legal impropriety should be ignored unless it is "sufficiently grevious [sic] to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."  Given the substantial evidence of defendant's guilt, the judge's inclusion of a full and accurate charge on attempt elsewhere in his charge, and the fact that he did not expressly limit his definition of attempt to that charge, we cannot say

that the error had a clear capacity to prejudice
defendant's right to a fair trial.

(Re 17 at pp. 5-7)(citations omitted).

Under federal law applicable in this habeas review,
generally, matters of state law and rules of procedure are not
reviewable in a federal habeas petition.  The Supreme Court has
stated that "it is not the province of a federal habeas court to
reexamine state-court determinations on state-law questions."
Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Federal courts
must afford the states deference in its determinations regarding
evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690
(1986).  It is well-established that "a state court's
misapplication of its own law does not generally raise a
constitutional claim.  The federal courts have no supervisory
authority over state judicial proceedings and may intervene only
to correct wrongs of constitutional dimension." Smith v. Horn,
120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert.
denied, 522 U.S. 1109 (1998).

Similarly, questions relating to jury charges are normally
matters of state law and are not cognizable in federal habeas
review.  See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v.
Kibbe, 431 U.S. 145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d
284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v.
O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.).  Only
where the jury instruction is "so prejudicial as to amount to a

24

violation of due process and fundamental fairness will a habeas corpus claim lie." Id.

"[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." McGuire, 502 U.S. at 71-72. Rather, the district court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson, 431 U.S. at 154 (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)). Moreover, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state's court judgment is even greater than the showing required to establish plain error on direct appeal." Id.

In this case, a review of the record and the jury charge reveals that Petitioner has not demonstrated that his entire trial and conviction was so prejudiced by the charges as to violate the principles of fundamental fairness and due process. In this case, there was ample evidence against Petitioner to justify his conviction, including the testimony of Williams and Muslim. Petitioner's conviction was based on a credibility determination by the jury, who chose to believe the state's witnesses over Petitioner's testimony. Petitioner's conviction was neither fundamentally unfair, nor violated due process.

Further, it is clear that the state courts utilized the correct federal concepts in deciding the jury charge claims, in that the state court recognized that the charges must be viewed in their entire context, and that in order to warrant relief for Petitioner, they must provide an unjust result.  The state court also found that the defendant's right to a fair trial was not violated due to the substantial evidence against defendant, and the overall context of the charge.  (Re 17 at pp. 6-7).

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, these grounds for a writ of habeas corpus will be denied.

**F.   Petitioner's Claim Regarding Admission of Evidence (Ground 8).**

In Ground Eight, Petitioner argues that the trial judge erred in allowing evidence of his prior bad acts to go before the jury.  Petitioner alleges that the admission of this evidence caused the jury to infer that he was a bad person and prejudiced his defense.  Specifically, Petitioner argued that on direct appeal during the direct examination of Muslim, the prosecutor

elicited the fact that according to Muslim, Petitioner "was
bragging and he was saying how he used to go to Virginia and buy
guns and bring them back to Paterson and sell guns and drugs."
The prosecutor used this phrase in summation also.

The trial judge attempted to limit the use of this
prejudicial information by charging the jury that:

> THE COURT: Ladies and gentlemen, the testimony with
> regard to the weapons being brought back from Virginia
> is only for the limited purpose of intent going to the
> [unlawful disposition of a weapon charge], whether or
> not that weapon was brought.  It's not to show
> disposition or predisposition.  That testimony is
> limited to that factor.

(Re 31 at p. 11).  During the final charge to the jury, the trial
judge informed the jurors:

> There was also some testimony in this matter involving
> guns, the sale of guns, the purchase of guns prior to
> this event.  That evidence – and I'm giving you a
> limiting instruction – is for a narrow purpose only, a
> very narrow purpose.
>
> You heard the testimony in this case concerning
> Gerald Wilson regarding an incident of the alleged sale
> or transport of guns prior to the events set forth in
> the indictment.  You heard testimony from Darrell
> Williams and you heard testimony from Timothy Glover
> wanting to buy a piece.
>
> Of course testimony concerning the alleged sale
> and transporting prior to the events we're dealing with
> here, this evidence cannot and should not be considered
> for the purpose of showing that Gerald Wilson had a
> pre-disposition or disposition to commit the crimes for
> which he is now being charged and for which you are
> going to consider his guilt or innocence.
>
> [Y]ou must and can only consider this evidence for a
> limited purpose.  Such evidence is only for the purpose
> of being considered by you, ladies and gentlemen, if

27

you feel it to be credible and worthy of belief for the
limited purpose of proving, 1, the statement of Gerald
Wilson on the day in question, February 27, as well as
on March the 2nd for the sale and possession of the
weapon, the motive and plan, the common scheme or plan
he may have had.  That's the only reason that testimony
was admitted, not to show his disposition or
predisposition.

(Re 32 at pp. 140-41).

Petitioner argued that the attempts to cure were
"insufficient to purge the taint of irrelevant and prejudicial
allegations, especially in a case where there was no direct or
circumstantial evidence to link him with this crime." (Re 21 at
p. 16).

The Appellate Division examined this claim on direct appeal,
and as a result of its review, overturned Petitioner's conviction
on unlawful disposition of a weapon.  (Re 17 at p. 12).  The
Appellate Division found that Muslim's statement concerning gun-
running and drug selling was inadmissible under New Jersey law.
(Re 17 at pp. 9-10).  The Appellate Division also found the
judge's attempt to cure "inadequate."  (Re 17 at p. 10).
However, the Appellate Division found that the "errors committed
by the trial judge were not clearly capable of producing an
unjust result with respect to those counts of the indictment
other than the count charging the sale of the gun." (Re 17 at p.
11).  This conclusion was based on the "judge's strong
admonitions against using the other-crime evidence as proof of
criminal disposition, his limitation of the evidence to the

28

charge of selling the gun, the absence of any relationship between the nature of the other-crime evidence and the other substantive offenses, and the substantial evidence of [Petitioner's] guilt . . . ."  (Re 17 at p. 11).

Under federal law, it is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.  See Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial.  See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001).

Here, state law permits evidence of other bad acts under certain circumstances.  See N.J.R.E. 404(b); State v. Cofield, 127 N.J. 328 (1992).  Petitioner has pointed this Court to no Supreme Court precedent in support of his position that his

29

conviction should be overturned, and this Court has located none.
To the contrary, in Estelle, the Supreme Court upheld the
admission of evidence of prior injuries, that were probative on
the question of intent in a trial for infant murder, and refused
habeas relief for a deficient limiting instruction.

"Admission of 'other crimes' evidence provides a ground for
federal habeas relief only if 'the evidence's probative value is
so conspicuously outweighed by its inflammatory content, so as to
violate a defendant's constitutional right to a fair trial.'"
Bronshtein v. Horn, 404 F.3d 700, 730-31 (3d Cir. 2005) (quoting
Lesko v. Owens, 881 F.2d 44, 52 (3d Cir. 1989)).

> When evidence of a defendant's other crimes is
> introduced ..., there is sometimes "a substantial
> danger of unfair prejudice" because the jury may
> consider the evidence as proof of bad character or
> propensity to commit the crime charged.  To alleviate
> this risk, counsel may request a cautionary
> instruction.  In some circumstances, such an
> instruction may be strongly advisable; in others,
> counsel may reasonably conclude that it is
> strategically preferable to omit such a request since
> the instruction might have the undesired effect of
> highlighting the other crimes evidence.

Buehl v. Vaughn, 166 F.3d 163, 170 (3d Cir. 1999)(internal
citations omitted).

In this case, the jury was given a curative instruction.
The state court examined all factors and based its decision not
to overturn the entire conviction on the factors set forth above.
The state court did overturn the conviction regarding the sale of
the gun.  The decision of the Appellate Division that Petitioner

30

was not deprived of a fair trial with regard to his other convictions was neither contrary to nor an unreasonable application of clearly established federal law.  Thus, Petitioner is not entitled to relief on this claim.

**G.   Petitioner's Claim Regarding PCR Court's Denial of Hearing (Ground 10).**

Petitioner argues in Ground Ten that the PCR court "denied [Petitioner] a fair hearing as was required by both the United States and New Jersey Constitutions, as [Petitioner] clearly set forth a prima facie case of his claims for relief."  The Appellate Division examined this claim on appeal of Petitioner's PCR denial, and found that it was "without sufficient merit to warrant discussion in a written opinion."  (Re 4 at p. 3).

It has long been established that habeas corpus relief is intended only to address claims attacking underlying state convictions, not matters collateral to those convictions.  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998), cert. denied, 526 U.S. 1065 (1999).  In Hassine, the Third Circuit held that "[t]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation."  Id.; see also Lambert v. Blackwell, 2003 WL 1718511 at *35 (E.D. Pa. Apr. 1, 2003)("Lambert's claims of errors by the [post-conviction

31

relief] court fail to assert viable federal habeas claims,"
citing Hassine, 160 F.3d at 954); Rollins v. Snyder, 2002 WL
226618 at *5 (D. Del. Feb. 13, 2002)("Rollins' claims based on
the Delaware courts' actions in his [post conviction proceedings]
are not cognizable on federal habeas review").  Unless state
collateral review violates some independent constitutional right,
such as the Equal Protection Clause, infirmities in state habeas
proceedings are not cognizable under § 2254 and do not warrant
federal habeas relief.  See, e.g., Rudd v. Johnson, 256 F.3d 317,
319-20 (5th Cir.), cert. denied, 121 S. Ct. 477 (2001); Gerlaugh
v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997), cert. denied,
525 U.S. 903 (1998); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir.),
cert. denied, 513 U.S. 983 (1994); Steele v. Young, 11 F.3d 1518,
1524 (10th Cir. 1993); Bryant v. Maryland, 848 F.2d 492, 492 (4th
Cir. 1988); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir.
1987); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986).  But
see, Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984)
(noting prevailing rule and concluding that federal habeas was
proper avenue for attacking state post-conviction proceedings).

     In the instant case, Petitioner's claim that he should have
been permitted a hearing on his ineffective counsel claims in his
PCR motion are without merit, as his treatment during PCR
proceedings is not cognizable in a federal habeas proceeding.
The Court also notes that an evidentiary hearing was conducted

concerning Petitioner's claims of ineffective assistance of appellate counsel.  (Re 37).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

s/William J. Martini

_____
                    WILLIAM J. MARTINI
                    United States District Judge

Dated: 12/21/06

33